

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | No. 19 CR 664 |
| v. | |
| | Judge Charles Norgle, Sr. |
| TUQIANG XIE, | |
| also known as "Tony Xie" | |

## PLEA AGREEMENT

1.     This Plea Agreement between the U.S. Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant TUQIANG XIE, also known as "Tony Xie," and his attorney, THOMAS A. DURKIN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The Information in this case charges defendant with engaging in the business of brokering activities without registration, in violation of 22 U.S.C. § 2778(c) (Count One), and filing a false tax return, in violation of 26 U.S.C. § 7206(1) (Count Two).

3.     Defendant has read the charges against him contained in the Information, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the Information: Count One, which charges Defendant with engaging in the business of brokering activities without registration, in violation of 22 U.S.C. § 2778(c); and Count Two, which charges defendant with filing a false tax return for tax year 2013, in violation of 26 U.S.C. § 7206(1). In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Two of the Information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to U.S.S.G. §§ 1B1.3, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

a.     With respect to Count One of the Information:

Beginning no later than August 4, 2014, and continuing until at least February 20, 2015, in the Central District of California, and elsewhere, defendant TUQIANG XIE, also known as "Tony Xie," did knowingly and willfully engage in the business of brokering activities involving the People's Republic of China in negotiating and arranging purchases, sales, transfers, export, and import of a defense article, namely an eyepiece assembly, National Stock Number 1240-01-063-1352, without first

2

registering with, and obtaining a license or written approval from, the United States Department of State, Directorate of Defense Trade Controls or the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives, in violation of Title 22, United States Code, Section 2778(c), Title 22, Code of Federal Regulations, Sections 121.1, 122.1, 127.1(a)(1), 129.1(a), 129.2, 129.3(a), 129.5(c), and Title 27, Code of Federal Regulations, Sections 447.21, 447.31, 447.41, and 447.61.

More specifically, defendant owned and operated Biomedical-Optics, LLC in Irvine, California. Among other things, Biomedical-Optics, by and through defendant, engaged in the business of brokering activities, that is, negotiating or arranging contracts, purchases, sales, or transfers of defense articles or defense services for a fee, commission or other consideration. Defendant, by and through Biomedical-Optics, imported defense articles, including optical and other components, from manufacturers in the People's Republic of China ("PRC") on behalf of clients in the United States.

In approximately November 2006, defendant was contacted by Bharat "Victor" Verma, who expressed an interest in defendant acquiring optical components from his sources in the PRC on behalf of Vibgyor Optical Systems, Inc. ("Vibgyor"), Victor Verma's Illinois-based company. One of Verma's family members, Individual A, owned and operated Defense Contractor A, a company that utilized Vibgyor as a subcontractor for Department of Defense contracts.

3

On November 29, 2006, defendant sent an email to Verma that, among other things, outlined the types of optical components defendant could acquire. The email also provided information on Biomedical-Optics, including that its manufacturing facility was located in the Hubei Province, in the PRC.

Shortly thereafter, Vibgyor began to order items, largely military optical technology, from Biomedical-Optics, which defendant then acquired from a manufacturer in the PRC. Defendant imported the items, including defense articles on the U.S. Munitions Import List, and forwarded them to addresses specified by Vibgyor representatives. Defendant also brokered the purchase of items, including defense articles on the U.S. Munitions Import List, from a manufacturer in the PRC on behalf of Defense Contractor A. Defendant later procured items, including defense articles on the U.S. Munitions Import List, from a manufacturer in the PRC on behalf of Broker B and Broker B's company. Broker B and Broker B's company ordered items from defendant in order to supply them to Vibgyor.

In order to facilitate the manufacture of the items ordered by Vibgyor, Defense Contractor A, and Broker B, defendant sent technical data and examples of the items to the manufacturer in the PRC. These items included defense articles on the U.S. Munitions List. Defendant received the examples and technical data from Vibgyor, Defense Contractor A, and Broker B, who provided the examples and technical data to defendant for the purpose of permitting the manufacture of the requested items. Those examples and technical data included defense articles on the

4

U.S. Munitions List. At times, the manufacturer in the PRC had questions about the items being produced, and defendant in turn asked representatives of Vibgyor, including Verma and others, for information to provide to the Chinese manufacturer.

At no point did defendant register as a broker with, or seek or receive the required license or written approval from, the Directorate of Defense Trade Controls to engage in brokering activities, or to export the technical data provided to him by Vibgyor, Defense Contractor A, or Broker B. Nor did defendant seek or receive the required permit from the Bureau of Alcohol, Tobacco, Firearms and Explosives to import the defense articles he procured on their behalf. Defendant knew that such requirements existed, having been so informed in 2008 and 2011 by representatives of Homeland Security Investigations. The Directorate of Defense Trade Controls never authorized the export of defense articles (*i.e.*, the technical data or items) sent by defendant to the manufacturer in the PRC. Nor did the Bureau of Alcohol, Tobacco, Firearms and Explosives issue a permit for the import of the defense articles.

At the request of Vibgyor and Defense Contractor A, defendant knowingly and intentionally attempted to circumvent U.S. customs enforcement by misidentifying items he imported from manufacturers in the PRC, misstating the cost of imported items, and receiving and forwarding items to Vibgyor and Defense Contractor A in Illinois.

One of the defense articles that defendant procured for Broker B was an eyepiece assembly, National Stock Number 1240-01-063-1352, which was a

component of a thermal sighting system for the M60A3 battle tank. In approximately July 2014, defendant received from Broker B a request for quotation to supply a quantity of the eyepiece assemblies. On or about August 4, 2014, defendant agreed to procure on behalf of Broker B 25 of the eyepiece assemblies from a manufacturer in the PRC. Between August 2014 and mid-February 2015, defendant brokered the import of the eyepiece assemblies, which defendant then caused to be delivered to Broker B. Defendant knew that the eyepiece assembly was a defense article on the U.S. Munitions Import List and that he was not licensed by the U.S. Department of State, Directorate of Defense Trade Controls, to engage in brokering activities related to the eyepiece assembly, to include the import of the eyepiece assembly on behalf of Broker B, nor did the Bureau of Alcohol, Tobacco, Firearms and Explosives issue the required permit for the import of the eyepiece assembly.

Defendant received payment from Vibgyor Optical Systems, Defense Contractor A, and Broker B for the defense articles defendant imported and caused to be imported from the PRC, without the required permit, on their behalf. Between approximately 2007 and 2014, defendant and Biomedical-Optics received payments totaling nearly $800,000 from Vibgyor, Defense Contractor A, and Broker B for the items defendant caused to be manufactured and imported from the PRC. Biomedical-Optics, by and through defendant, made payments to the Chinese manufacturer totaling nearly $600,000. In total, Biomedical-Optics and defendant made a profit of

approximately $200,027 by unlawfully importing items from the PRC on behalf of Vibgyor, Defense Contractor A, and Broker B.

        b.    <u>With respect to Count Two of the Information</u>:

On or about April 3, 2014, in the Central District of California and elsewhere, defendant did willfully aid, abet, assist, and cause to be made and subscribed an Internal Revenue Service ("IRS") Form 1120S, U.S. Income Tax Return for an S Corporation, for Biomedical-Optics, LLC, for calendar year 2013, which was verified by a written declaration that it was made under the penalties of perjury and which defendant did not believe to be true and correct as to every material matter. That corporate tax return, which was filed with the Director, Internal Revenue Service Center, falsely reported on line 1a the "[g]ross receipts or sales" of Biomedical-Optics in the amount of $568,463, whereas, he then and there knew Biomedical-Optics had actually received $785,085 in gross receipts and sales in calendar year 2013. Due to this and other false entries on the corporate tax return, defendant caused a tax loss of $3,640, which is the total tax loss for this count of conviction

In the course of operating and managing his business, defendant maintained two sets of books, in which he recorded the gross receipts and cost of goods sold for Biomedical-Optics. In one set of books, defendant maintained accurate figures. In the second set of books, defendant maintained lower figures by omitting entire sales transactions from the original books, thus reducing both the total gross-receipts figures and the total cost-of-goods-sold figures. By omitting those transactions, the

second set of books appeared to show that the business had lower profits than it actually had and, as the sole owner of Biomedical-Optics, defendant would thus be required to pay less in tax. Defendant later provided the second, false set of books to his return preparer, who used the false set of books to complete the 2013 Form 1120S for Biomedical-Optics. Defendant then signed the 2013 Form 1120S by hand on March 17, 2014, and authorized his return preparer to file the return with the IRS on behalf of Biomedical-Optics.

Defendant similarly under-reported the gross sales and profits of Biomedical Optics, LLC in calendar years 2009 – 2012, resulting in additional intended tax loss of more than $100,000 but not more than $250,000.

## Maximum Statutory Penalties

7.     Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.     Count One carries a maximum sentence of twenty years of imprisonment. Count One also carries a maximum fine of $1,000,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that with respect to Count One, the judge also may impose a term of supervised release of not more than three years.

b.     Count Two carries a maximum sentence of three years of imprisonment. Count Two also carries a maximum fine of $250,000. Defendant further understands that the Court must order costs of prosecution, estimated not to

exceed $500. Defendant further understands that with respect to Count Two, the judge also may impose a term of supervised release of not more than one year.

      c.     Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

      d.     In accord with 18 U.S.C. § 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

      e.     Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is twenty-three years of imprisonment. In addition, defendant is subject to a total maximum fine of $1,250,000, or twice the gross gain or gross loss resulting from the offenses of conviction, whichever is greater, mandatory costs of prosecution, a period of supervised release, and special assessments totaling $200, in addition to any restitution ordered by the Court.

### Sentencing Guidelines Calculations

      8.     Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate

deterrence to criminal conduct, protect the public from further crimes of defendant, and provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2018 Guidelines Manual.

b. **Offense Level Calculations**.

i. The base offense level for Count One is 26, pursuant to USSG § 2M5.2(a)(1).

ii. The base offense level for Count Two is 16, pursuant to USSG §§ 2T1.1(a)(1) and 2T4.1(F).

iii. Because the offense level for Count Two is nine or more levels less serious than the offense level for Count One, the applicable offense level for the Group is not increased, pursuant to USSG § 3D1.4(c).

iv.     Defendant and the United States agree that the offense in Count Two involved an actual loss to the victim of $3,640. Defendant and the United States agree that the total tax loss, which includes relevant conduct beyond the count of conviction pursuant to USSG §§ 1B1.3 and 2T1.1, is greater than $100,000, but not greater than $250,000.

v.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of USSG § 3E1.1(a), including by furnishing the U.S. Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

vi.     In accord with USSG § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by USSG § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.     **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d.     **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 23, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 46 to 57 months of imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e.     Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall

12

not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.      Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

10.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

11.     Pursuant to 18 U.S.C. §§ 3663(a)(3) and 3664, defendant agrees to pay restitution to the U.S. Treasury arising from the offense and relevant conduct set forth above. There is no current actual tax loss and no restitution owed.

12.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to

18 U.S.C. § 3664(k), he is required to notify the Court and the U.S. Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

13. Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

14. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to 18 U.S.C. §§ 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

15. Defendant agrees that he is liable for the fraud penalty imposed by 26 U.S.C. § 6663 on the understatements of liability for calendar years 2011, 2012, and 2013.

### Forfeiture

16. Defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property constituting or derived from proceeds obtained, directly or indirectly, as a result of the offense.

17. Defendant agrees to the entry of a personal money judgment in the amount of $200,027, which represents the total amount of proceeds traceable to the offense. Defendant consents to the immediate entry of a preliminary order of

14

forfeiture setting forth the amount of the personal money judgment he will be ordered to pay.

18.     Defendant admits that because the directly forfeitable property is no longer available for forfeiture as described in 21 U.S.C. § 853(p)(1), the United States is entitled to seek forfeiture of any other property of defendant, up to the value of the personal money judgment, as substitute assets pursuant to 21 U.S.C. § 853(p)(2).

19.     Defendant understands that forfeiture shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition the forfeiture judgment. In this case, however, the U.S. Attorney's Office will recommend to the Attorney General that any net proceeds derived from any forfeited assets be remitted or restored to eligible victims of the offense pursuant to 18 U.S.C. § 981(e), 28 C.F.R. pt. 9, and other applicable law.

20.     Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under 28 U.S.C. § 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

21.    This Agreement is entirely voluntary and represents the entire agreement between the U.S. Attorney and defendant regarding defendant's criminal liability in *United States v. Tuqiang Xie*, case number 19 CR 664.

22.    This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the U.S. Attorney's Office for the Northern District of Illinois, the U.S. Attorney's Office for the Central District of California, and the U.S. Department of Justice, Tax Division, Criminal Enforcement Section, and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

23.    Defendant understands that nothing in this Agreement shall limit the IRS in its collection of any taxes, interest or penalties from defendant and his spouse. Defendant understands that the amount of tax as calculated by the IRS may exceed the amount of tax due as calculated for the criminal case.

## Waiver of Rights

24.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Right to be charged by indictment**. Defendant understands that he has a right to have the charges prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the Information, the information process, or the fact that he has been prosecuted by way of information.

b.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove

prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the Information separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

        iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

        v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

        vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

c.    **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of forfeiture, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the

filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

        d.      Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

      25.    Defendant understands that he has the right to have the criminal charges in the Information brought within five years of the last of the alleged acts constituting the specified violations. By signing this document, defendant knowingly waives any right to have the charges in the Information brought against him within the period established by the statute of limitations. Defendant also knowingly waives any defense or claim based upon the statute of limitations or upon the timeliness with which the charges in the Information were brought.

      26.    Defendant understands that he has the right to be prosecuted for any criminal offense in the district or districts where the offense was committed. By signing this Agreement, defendant knowingly consents to prosecution of the charges against him in the Northern District of Illinois and waives any objection to the venue of this prosecution.

### Presentence Investigation Report/Post-Sentence Supervision

      27.    Defendant understands that the U.S. Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and

extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

28. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the U.S. Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to USSG § 3E1.1 and enhancement of his sentence for obstruction of justice under USSG § 3C1.1, and may be prosecuted as a violation of 18 U.S.C. § 1001, or as a contempt of the Court.

29. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the U.S. Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement

21

shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in 26 U.S.C. § 6103(b).

### Other Terms

30.     Defendant agrees to cooperate with the U.S. Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the U.S. Attorney's Office.

31.     Regarding matters relating to the IRS, defendant agrees as follows (nothing in this paragraph, however, precludes defendant and his spouse from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS):

      a.     Defendant agrees to cooperate with the IRS in any tax examination or audit of defendant and his spouse which directly or indirectly relates to or arises out of the course of conduct that defendant has acknowledged in this Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records that the IRS may request.

32.     Defendant will not object to a motion brought by the U.S. Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials, which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the

government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the U.S. Attorney's Office, or an appropriate federal or state agency (including but not limited to the IRS), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant and his spouse. Nothing in this paragraph or the preceding paragraph precludes defendant and his spouse from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

33. Defendant understands that 10 U.S.C. § 2408 provides for a mandatory term of debarment of at least five years for any individual convicted of fraud or other felony arising out of a contract with the Department of Defense. The term of debarment may only be waived if the Secretary of Defense determines a waiver is in the interests of national security. Defendant understands that he may be subject to administrative action by other federal or state agencies, based upon the conviction resulting from this Plea Agreement and upon grounds other than 10 U.S.C. § 2408. This Plea Agreement in no way controls whatever action, if any, other agencies may take. Defendant nevertheless affirms that he wants to plead guilty regardless of the debarment or administrative action consequences of his plea.

34. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under

23

federal law, a broad range of crimes are removable offenses, including one or more offenses to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his guilty plea may entail, even if the consequence is his automatic removal from the United States.

## Conclusion

35.    Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

36.    Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant,

any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

37.  Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

38.  Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

39.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: ___9.10.19___

JOHN R. LAUSCH, JR.
United States Attorney

SHOBA PILLAY
DIANE MACARTHUR
Assistant U.S. Attorneys

MATTHEW R. HOFFMAN
ERIN S. MELLEN
Trial Attorneys
Department of Justice

TUQIANG XIE
Defendant

THOMAS A. DURKIN
Attorney for Defendant

26